United States of America *v.* Tom.

---

UNITED STATES OF AMERICA *v.* TOM.

*Adjourned from Clackamas.*

1. Oregon is not a part of the Indian country, as defined by the .act of Congress of June 30th, 1834, and consequently, the provisions of that act did not originally extend to Oregon. .

2. The act of Congress of June 5th, 1850, by extending the act of June 30th, 1834, to Oregon, *so far as its provisions may be applicable,* conferred upon the judiciary of the territory the power to determine how far, and in what respects, said act is applicable to the same.

3. So much of the act of Congress of June 30th, 1834, as prohibits the selling, exchanging, giving, bartering, or disposing of any spirituous liquors or wines to an Indian, is applicable to Oregon, and therefore the law of the territory.

TOM, an Indian, was indicted, at the last term of the District Court for Clackamas County, for selling liquor to the

United States of America *v.* Tom.

Indians. A motion was made to quash the indictment, on the ground that Oregon was not Indian country, and the United States law of 1834 inapplicable.

*A. Holbrook*, U. S. District Attorney.

*D. Logan*, for defendant.

WILLIAMS, C. J. The question is not free from doubt or difficulty. Oregon is generally supposed to be a part of the Indian country named in the act of Congress of June 30th, 1834; but such is not the case.

Great Britain and the United States made a treaty in 1818, by which the northern boundary of the latter was extended west on the 49th parallel of north latitude to the Stony Mountains; and the territory beyond this was described as country to be held in the joint occupation of the two powers.

The Rocky Mountains then was the western boundary of the United States for legislative purposes, and so continued until 1846. The act of 1834 shows in terms, that it was intended as a country over which the general government had absolute and exclusive jurisdiction. Congress, by express enactment in 1850, extended said act to this territory, for the reason, as must be supposed, that it was not in force here before that time. The act of 1834 then has no vitality here, because Oregon is Indian country, but by virtue of the act of 1850, which gives it effect here so far as its provisions may be applicable. Is that provision prohibiting the sale of liquor to the Indians applicable? Very much of the act of 1834 is clearly unsuited to the present condition of the country. All which tends to prevent immigration, the free occupation and use of the country by whites, must be considered as repealed. Whatever militates against the true interests of a white population is inapplicable. Reference can be made to no law which, in express words, or by implication, repeals the provision in question; and no good reason can be assigned why it should not be held applicable to our condition.

If required in a country wholly inhabited by Indians, how much greater the necessity for its enforcement here, where defenceless white persons, women and children, are exposed to the violence of drunken savages.

Selling liquor to Indians is not necessary to the welfare or prosperity of the people here; on the contrary, such a prohibition is a blessing to the Indians, and highly promotive to the safety, peace and good order of the whole community.

Motion overruled.

Olney J. I concur with the Chief Justice, that no part of Oregon is Indian country, as defined by the act of 1834, and that none of the provisions of that act were put in force here by the law establishing the territorial government. It was a local statute, and was no more extended here by the last clause of section 14 of our organic act, than were the local laws of the District of Columbia. That clause extended over us the general laws of the United States, under which we possessed the right to import, and sell to all classes of customers, goods of any description, spirits and wine included. I arrive at the same conclusion with the Chief Justice, that up to June 5th, 1850, there were no restrictions or regulations touching the sale of spirits, or other commodities to Indians. On that day Congress enacted, " that the law regulating trade and intercourse with the Indian tribes, east of the Rocky Mountains, or such provisions of the same as may be applicable, be extended over the Indian tribes in the territory of Oregon." The law referred to is the act of 1834; by omitting to declare which of its provisions, if any, are applicable, Congress has devolved this task upon the courts. No rule being given whereby to determine which are, and which are not applicable, our first and perhaps most difficult duty is to fix upon such a rule. The Chief Justice thinks this particular provision beneficial to the whites, and therefore applicable. He makes " the true interests of the white population," or, in other words, *his* ideas of what is *expedient* for them, the test of applicability. In this I have not as yet been able

to concur. Congress has declared that this Indian code, in its application to Oregon, shall adapt itself to the existing state of things. If, therefore, any of its provisions conflict with existing laws, or rights under those laws, the former and not the latter must give way; thus making the *rights* of the whites, under existing laws, the test of applicability; and as the rights of unrestrained traffic with the Indians is admitted to have existed, the Indian code must adjust itself to, and not destroy that right.

McFADDEN, J. The opinions of Chief Justice Williams, and Justice Olney, as to whether the act of Congress of 1834, entitled " An act regulating trade and intercourse with the Indian tribes, and to preserve peace upon the frontiers," is applicable here, have been submitted to me with a request, that I should give an opinion on what seems to be a vexed question in this territory. Upon an examination of the several acts of Congress, and the treaties of joint occupation between the United States and Great Britain, I have no hesitation in stating the conclusions to which I have arrived.

It is proper to say in this connection, that this question came before the District Court of Clackamas County, on a motion to quash an indictment for the sale of liquor to the Indians. I was not present at the argument of the case, and cannot say any thing on the facts involved in this particular case. On the abstract questions of law I will state my opinion. I concur in opinion that, that whatever vitality the act of 1834, entitled " An act to regulate trade and intercourse with the Indian tribes" may have in this territory, is derivable from the act of Congress of June, 1850, which extends the act of 1834, or so much of it as may be applicable, to the situation of affairs in the territory of Oregon. This act is positive and explicit in its terms; and, however objectionable the exercise of the discretionary power conferred upon the judiciary of the territory of Oregon may be, it is not a conclusive objection to the exercise of the power, if it be clearly delegated, as I apprehend it is, by the

act of Congress of June, 1850. If there be any portions of the act of Congress of 1834 not in contravention of a subsequent law of Congress, and not inapplicable to the existing state of affairs in this territory, so much of the act must be enforced here, until Congress shall see proper, by legislation, to direct otherwise. That the act of Congress of 1834 does contain some important provisions which may affect the welfare of the white settlers, as well as the peace and quiet of the Indians, I think cannot be well doubted. I might refer to sections 12 to 16 inclusive, which embrace important provisions, calculated to secure not only the peace and welfare of the Indian tribes, but their observance is necessary to the security of the white population. Section 20 provides, "that if any person shall sell, exchange, or give, barter or dispose, of any spirituous liquors or wine to an Indian, such person shall forfeit and pay," &c. The enforcement of this clause is important, as prohibiting the sale, or giving of liquor to Indians. The enforcement of it here, as has been aptly remarked by the Chief Justice, is not only necessary to the protection of "defenceless white persons, women and children, who are exposed to the violence of drunken savages," but to the Indians themselves. Indian prosperity lies in the path of temperance; the reverse is certain and unerring destruction. This provision of the act of 1834 is well suited to the state of affairs here. Its enforcement would have a salutary influence on the community. It would contribute to the peace and quiet of the Indians, and, as a consequence, prevent the commission of crimes. It would not be in contravention of any act of Congress, or in conflict with any of the laws of this territory. The question, it is true, is not free from difficulty; but believing that no violence is done to the well-known and established rules of law in the construction given to the act of Congress, I have been constrained to this conclusion. On this question, therefore, I concur with the opinion of Chief Justice Williams.

As to whether this be Indian country or not, I am not so well satisfied. For the important purposes connected with

the civilization and settlement of the country, under the laws of Congress, it cannot well be regarded as Indian country. The settlement of this question, I think, is not necessary in determining whether the act of Congress of 1834, or any part thereof, be in force.